1  JOHN S. WORDEN
2  VENABLE LLP
   101 California Street, Suite 3800
3  San Francisco, CA 94111
   Telephone:     415-653-3750
4  Facsimile:     415-653-3755

5  Attorneys for Plaintiffs
   CURRAX PHARMACEUTICALS LLC and NALPROPION
6  PHARMACEUTICALS LLC

7

8                      UNITED STATES DISTRICT COURT
9                      NORTHERN DISTRICT OF CALIFORNIA

10

11  CURRAX PHARMACEUTICALS LLC          Case No.  3:23-CV-0977
    and NALPROPION
12  PHARMACEUTICALS LLC
                            Plaintiffs,
13
        v.                               **COMPLAINT**
14
    FOUND HEALTH INC. f/k/a TORCH RX      **DEMAND FOR JURY TRIAL**
15
                            Defendant.    Date:
16
                                         Trial Date:
17

18

19          Plaintiffs, Currax Pharmaceuticals LLC ("Currax") and Nalpropion Pharmaceuticals LLC

20  ("Nalpropion") (collectively, Plaintiffs), for their Complaint against Defendant Found Health Inc.

21  f/k/a Torch Rx ("Defendant" or "Found"), hereby allege as follows:

22                              **NATURE OF THE ACTION**

23          1.      Plaintiffs bring this action challenging Found's false designation of origin, false

24  advertising, trademark infringement, and unfair competition.   Plaintiffs seek damages and

25  injunctive relief for Defendant's willful infringement of Plaintiffs' federally registered trademarks

26  in the Contrave® brand and false advertising using the same, because such use is likely to:

27  (1) cause confusion as to the affiliation, connection, association, origin, sponsorship, and/or

28  approval of Defendant's goods and services with those of Plaintiffs; and (2) mislead consumers

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415-653-3750

-1-

into believing that the material characteristics of Defendant's weight loss products are the same or equivalent to Contrave®. These actions constitute trademark infringement, false designation of origin, false advertising, and unfair competition in violation of Sections 32 and 43(a) of the Lanham Act (15 U.S.C. §§ 1114 and 1125(a)) and California Business and Professions Code §§ 17200 and 17500 et seq.

## **PARTIES**

### Plaintiffs

2.      Plaintiff, Currax, is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business located at 155 Franklin Road, Suite 450, Brentwood, Tennessee 37027.

3.      Plaintiff, Nalpropion, is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business located at 9171 Towne Centre Drive, Suite 270, San Diego, CA 92122.

4.      Plaintiffs are in the business of providing patient-first pharmaceutical services focused on the number one and number two causes of preventable death in the United States: smoking and obesity.

5.      Plaintiff, Nalpropion, is the owner of the Contrave® Trademarks (as defined herein), and Plaintiff Currax is the exclusive manufacturer and distributor of the FDA-approved weight-loss medication Contrave®, among other products and services.

6.      Plaintiffs' Contrave® brand enjoys a valuable reputation and enormous goodwill in the weight loss industry. For over eight years, Contrave® Trademarks have been used as source identifiers in commerce in connection with weight loss products.

### Defendant

7.      Defendant, Found, is a Delaware corporation with a principal place of business located in San Francisco, California.

8.      Found describes itself as the largest weight loss clinic in the United States.

9.      Defendant is in fact an online telemedicine provider focused on weight management.

10.     Found's business, among other things, involves selling subscriptions to an online weight loss program providing nutritional tips, lifestyle coaching, and medication.

11.     Upon information and belief in marketing its program, Found uses products that Found and its agents describe as Contrave®, equivalent to Contrave®, or a Contrave® generic.

## JURISDICTION

12.     This court has subject matter jurisdiction over Plaintiffs' Lanham Act claims under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as those claims are part of the same case or controversy as the federal claims alleged herein.

13.     Personal jurisdiction is proper in this judicial district because Defendant's principal place of business is in the state of California.

14.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS

### Plaintiffs' Contrave® Weight Loss Product

15.     Contrave® is an FDA-approved prescription weight-loss medication for use in adults with a body mass index (BMI) of 30 kg/m2 or greater, or adults with a BMI of 27 kg/m2 or greater with at least one weight-related medical problem such as high blood pressure, high cholesterol, or type 2 diabetes.

16.     Contrave® works by targeting two areas of the brain that cause hunger and cravings.  The first, the hunger center of the brain (hypothalamus) can increase hunger, telling you to eat again or eat more.  The second, the mesolimbic circuit or reward system of the brain, can create cravings that seem uncontrollable even when you are not hungry.

17.     Contrave® has been studied and approved for efficacy and safety in several clinical trials.  Three different clinical studies showed that patients taking Contrave®, along with diet and exercise, lost 2x-4x more weight than with diet and exercise alone.  Contrave® is in fact the only combination of Naltrexone and Bupropion that has passed any clinical trials for weight loss safety and efficacy and the only one approved by the FDA for such use.

18.    Contrave's® proven safety and efficacy has helped it become the #1 branded prescription oral non-DEA-controlled weight loss medication.[1]

19.    Contrave® is a single tablet extended-release combination of 90 mg of Bupropion HCI and 8 mg of Naltrexone HCI that together reduce hunger and control cravings to help people lose weight and keep it off.

20.    Naltrexone and Bupropion are available separately in different strengths for different indications.  Individually, Naltrexone is an opioid antagonist approved to treat alcohol or opioid use disorders.  Individually, Bupropion is used to treat depression, seasonal affective disorder, and smoking cessation.

21.    Bupropion is not available individually in the same 90 mg dosage strength that each Contrave® tablet contains.  Naltrexone is not available individually in the same 8 mg dosage strength that each Contrave® tablet contains.  Nor is Naltrexone available individually as a sustained-release tablet.  Individual Naltrexone tablets thus do not have the same release profile as Contrave®.

## Contrave® Trademarks

22.    Plaintiffs have built a longstanding reputation in the healthcare industry for producing safe, quality, and effective medications for treating sleeping disorders, migraines, and obesity.

23.    In the weight management industry, Plaintiffs have been particularly successful in building their branded weight loss medication, Contrave®, to become the #1 branded prescription oral non-DEA-controlled weight loss medication.

24.    As a result of Plaintiffs' longstanding efforts of investing in research, development, testing, clinical trials, and the FDA approval process, Contrave® now stands as the only FDA approved prescription medication combining Naltrexone and Bupropion for weight loss.

---

[1] Based on the number of prescription fills for a brand name weight-loss drug in the IQVIA database July 2021-June 2022

Case No.                                                                                          COMPLAINT

25.     Plaintiffs' effort has not gone unnoticed.  The Contrave® brand is well known in the weight management community and has earned a strong customer base with its reputation for safety and efficacy.

26.     To protect the investment, Plaintiffs have acquired trademarks covering pharmaceutical products and services for the treatment of obesity, collectively referenced herein as the ("Contrave® Trademarks").  True and correct copies of the Contrave® Trademarks and relevant assignments are attached within Exhibit A.

27.     The following Contrave® Trademarks protect Plaintiffs' product:

| Trademark Registration No. | Trademark Description | Goods and/or Services | First Use in Commerce Date |
|---|---|---|---|
| 3,393,576 | CONTRAVE (standard character mark) | Pharmaceutical preparation for treatment of obesity | 10/02/2007 |
| 5,181,874 | CONTRAVE (word mark) | Pharmaceutical preparation for treatment of obesity; printed materials concerning weight management; medical information services in the field of weight management | 09/2014 |
| 5,586,961 | GET CONTRAVE NOW (word mark) | Online pharmaceutical advice | 12/14/2016 |

28.     One or more of the Contrave® Trademarks have appeared continuously on all authentic Contrave® medications sold by Plaintiffs and in all advertisements and promotions concerning the same.

29.     Because of Contrave's® longstanding popularity, singular position as the only FDA approved prescription drug in its category, and Plaintiffs' longstanding extensive use of the

1  Contrave® Trademarks on goods and services of superior quality, Plaintiffs have developed

2  substantial goodwill and an enviable reputation as the exclusive source of Contrave®.

3       30.     The Contrave® Trademarks are entitled to the highest level of protection under

4  U.S. law.

5       31.     An example of the Contrave® Trademarks appearing in the marketplace can be

6  found on its website[2], including within the domain itself, and on its product labeling as pictured

7  below:

8

9

10                           

11

12

13

14

15

16                    **Defendant's Telemedicine Business**

17       32.     The Defendant owns and operates the self-described largest weight loss clinic in

18  the United States.

19       33.     Upon information and belief, the Defendant is in fact an online telemedicine

20  provider focused on weight management.  *See* https://support.joinfound.com/test-article-2-

21  HylZ7o_Bd .

22       34.     The Defendant's business model involves a subscription service where users sign

23  up for a membership to the platform for a recurring fee that varies depending on the program and

24  commitment length of the membership.  *See* https://support.joinfound.com/en_us/what-is-the-

25  cost-of-the-program-SkkeUeYc .

26       35.     Defendant describes its services as including "online consultations with a board-

27  certified practitioner to evaluate and manage the addition of medications to address weight at the

28  _____

[2] https://contrave.com/

Case No.                                                                    COMPLAINT

cellular level; guided programming, recipes, and health articles designed by behavioral health experts and registered dietitians; as well as access to a private community." *See* https://support.joinfound.com/test-article-2-HylZ7o_Bd .

36.    Upon information and belief, one of the "medications to address weight at the cellular level" prescribed by Defendant is one 50 mg tablet of Naltrexone with a separate 150 mg sustained-release tablet of Bupropion (together the "False Generic").

37.    The following table summarizes some of the differences between Contrave® and Defendant's False Generic:

| Characteristic | Contrave® | Defendant's False Generic |
|---|---|---|
| 90 mg of Bupropion per tablet | Yes | No |
| 8 mg of Naltrexone per tablet | Yes | No |
| Sustained-release Naltrexone | Yes | No |
| Single tablet combining Bupropion and Naltrexone | Yes | No |
| Dosing schedule does not require splitting tablets | Yes | No |
| Dosing schedule specifies morning and evening doses | Yes | No |
| 90 mg total daily dose of Bupropion during week 1 | Yes | No |
| 8 mg total daily dose of Naltrexone during week 1 | Yes | No |
| 180 mg total daily dose of Bupropion during week 2 | Yes | No |
| 16 mg total daily dose of Naltrexone during week 2 | Yes | No |
| 270 mg total daily dose of Bupropion during week 3 | Yes | No |
| 24 mg total daily dose of Naltrexone during week 3 | Yes | No |
| 360 mg total daily dose of Bupropion during weeks 4+ | Yes | No |
| 32 mg total daily dose of Naltrexone during weeks 4+ | Yes | No |
| Supported by clinical study for prescribed indication | Yes | No |
| FDA approved for prescribed indication | Yes | No |

Case No.                                                                      COMPLAINT

38.     From February-June 2022, Plaintiffs hired investigators to sign up for Found's services and collect information concerning Defendant's suspected unlawful activities.  These investigators recorded multiple instances of Defendant's prescribing the False Generic for weight loss:

- March 14, 2022 – Found Medical Provider 1 prescribes Plaintiffs' Investigator 1 the False Generic:



-8-

1  • March 22, 2022 – Found Medical Provider 2 prescribes Plaintiffs' Investigator 2 the False

2    Generic:



Case No.                                                                                            COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Case No.                                                                                    COMPLAINT

- April 13, 2022 – Found Medical Provider 3 prescribes Plaintiffs' Investigator 3 the False Generic:

Case No.                                                                                    COMPLAINT

1    • April 13, 2022 – Found Medical Provider 4 prescribes Plaintiffs' Investigator 4 the False

2    Generic

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28




Case No.                                                                              COMPLAINT



39. Upon information and belief, and as evidenced from the screenshots of the above correspondence, each of these medical professionals were prescribing the False Generic within the messaging system of Defendant's subscription service platform.

40. Upon information and belief, and as evidenced from the screenshots of the above correspondence, each of these medical professionals were prescribing the False Generic on behalf of Defendant and its business.

**<u>Defendant's Unlawful Activity</u>**

41.     Defendant has been illegally infringing on the Contrave® Trademarks to misrepresent its False Generic as Contrave®, a Contrave® equivalent, or a Contrave® generic.

42.     Upon information and belief, Defendant has been consistently advertising to consumers in its subscription program communications that Found's False Generic is Contrave®, a Contrave® equivalent, or a Contrave® generic.

43.     Plaintiffs' investigators also recorded multiple instances of Defendant's unlawful infringement of the Contrave® Trademarks and its misrepresentations in adverting its False Generic as Contrave®, a Contrave® equivalent, or a Contrave® generic in consumer communications:

- March 14, 2022 – Found Medical Provider 1 indicates to Plaintiffs' Investigator 1 that she can "obtain more information about this [False Generic] by doing a search for Contrave, the FDA approved weight loss therapy having both medication in one tablet." *See* Exhibit B at 1.

44.     Defendant's statement that a consumer could obtain more information about its False Generic by comparing information found in a search for Contrave® is unambiguously false and misleading.

45.     Contrave® is the only combination and form of Bupropion and Naltrexone that is FDA approved for weight loss.  Contrave® is only available in a one tablet, extended released, fixed dose combination of 90 mg of Bupropion HCI and 8 mg of Naltrexone HCI.

46.     Upon information and belief, Defendant's False Generic is prescribed in a two-tablet format of 50 mg of Naltrexone separate from 150 mg of sustained-release Bupropion, with both the Naltrexone tablet and Bupropion tablet to be taken together.

47.     Given the different formats, different dosages, and different approvals, it is grossly misleading to indicate to any customer that the safety and efficacy information found concerning Contrave® would be comparable to Defendant's False Generic.

Case No.                                                                                                        COMPLAINT

48.     Furthermore, Plaintiffs' investigators obtained several samples of Defendant's False Generic, and it was rigorously tested using Plaintiffs' standard quality control tests for Contrave®.  The False generic failed every test:

- Failed "Identity Test":
  - It is not the one tablet fixed dose combination of Contrave®, as the False Generic is prescribed as two separate monocomponents of Naltrexone and Bupropion
- Failed "Dissolution Analysis":
  - The product failed percent dissolution at the half hour and full hour analysis points.  Dissolution rates are a critical analytical parameter for oral dosage form pharmaceutical products and are correlated with absorption rates.
- Failed "Strength Analysis":
  - The False Generic monocomponents of Naltrexone and Bupropion are prescribed in different dosage strengths than are found in Contrave®.
- Failed "Impurities Analysis":
  - Unknown impurities were identified in the samples analyzed; these impurities are not identified nor present in Contrave®.

49.     Therefore, Defendant's statements misrepresenting that information regarding Contrave® is informative as it concerns the False Generic, is demonstrably deceptive practically and scientifically.

50.     Upon information and belief, Defendant uses the Contrave® Trademarks in Paragraph 45, and statements such as these, in communications to consumers to confuse them into believing Found is offering Contrave®, a Contrave® equivalent, or a Contrave® generic for sale.

51.     Upon information and belief, Defendant uses the Contrave® Trademarks in such statements in communications to consumers to confuse them into believing that Defendant's False Generic originates from, or is affiliated with, Plaintiffs and their Contrave® product.

Case No.                                                                    COMPLAINT

52.     Upon information and belief, Defendant uses the Contrave® Trademarks in such statements in its advertising communications to consumers to mislead them into believing that Defendant's False Generic is Contrave®, a Contrave® equivalent, or a Contrave® generic.

53.     Defendant's deceptive statements do not stop at simply implying a comparison between Contrave® and its False Generic, but go so far as to misrepresent that the False Generic is the same as Contrave:

- March 22, 2022 – Found Medical Provider 2 indicates to Plaintiffs' Investigator 2 that one of the medications offered by Defendant is "Bupropion + Naltrexone (often known as Contrave)" *See* Exhibit B at 2.

54.     Defendant's statement here is directly deceptive to consumers for all the reasons stated above, but also because Contrave® is a branded product only sold by Plaintiffs.

55.     Defendant's statement directly represents to consumers that Found offers Contrave®, which is false.

56.     Upon information and belief, Defendant uses the Contrave® Trademarks in this statement, and statements such as these, in communications to consumers to confuse them into believing Found is offering Contrave® for sale.

57.     Upon information and belief, Defendant uses the Contrave® Trademarks in such statements in communications to consumers to confuse them into believing that Defendant's False Generic originates from, or is affiliated with, Plaintiffs and their Contrave® product.

58.     Upon information and belief, Defendant uses the Contrave® Trademarks in such statements in its advertising communications to consumers to mislead them into believing that Defendant's False Generic is Contrave®, a Contrave® equivalent, or a Contrave® generic.

59.     Upon information and belief, Defendant also represents in advertising communications to customers that its False Generic is a Contrave® generic:

- April 13, 2022 – Found Medical Provider 3 responds to confusion from Plaintiffs' Investigator 3 on whether he is receiving Contrave or not by stating: "Yes, this is generic for Contrave." *See* Exhibit B at 3.

- April 13, 2022 – Found Medical Provider 4 instructs Investigator 4 that the False Generic "combination also goes by the brand name Contrave if you wanted to do any research" *See id.* at 4-5.

  o Investigator 4 responds, "I looked up contrave online and read about it. So these medicines are just a generic version of that? My weight loss will be along the lines of what they talk about that site?"

    ▪ Nurse Practitioner Kimberly Anderegg responds, "Yes – these are just the generic version and yes similar to Contrave."

60. Defendant's statement here is directly deceptive to consumers for all the reasons stated above, but also because Contrave® has no generic version.

61. Generic drugs are approved only after a rigorous review by the FDA and after a set period of time that the brand product has been on the market exclusively. This is because new drugs, like other new products, are usually protected by patents that prohibit others from making and selling copies of the same drug.[3]

62. Plaintiffs have patent protection for Contrave® until at least 2034 and therefore there can be no approved generic Contrave® in the United States during this time.

63. Further, in order to become an FDA approved generic, Defendant would have to follow the appropriate FDA approval process put in place for the safety of patients. This process would require Defendant to perform required testing/studies and to submit an abbreviated new drug application (ANDA) to FDA for approval to market a generic drug that is the same as (or bioequivalent to as defined by FDA) the brand product.

64. An ANDA must show the generic medicine is equivalent to the brand in the following ways:

- The active ingredient is the same as that of the brand-name drug/innovator drug;

- The generic medicine is the same strength;

---

[3] https://www.fda.gov/drugs/frequently-asked-questions-popular-topics/generic-drugs-questions-answers#:~:text=Generic%20drugs%20are%20approved%20only,copies%20of%20the%20same%20drug

Case No.                                                                                    COMPLAINT

- The medicine is the same type of product (such as a tablet or an injectable);

- The medicine has the same route of administration (such as oral or topical);

- It has the same use indications;

- The inactive ingredients of the medicine are acceptable;

- It lasts for at least the same amount of time;

- It is manufactured under the same strict standards as the brand-name medicine;

- The container in which the medicine will be shipped and sold is appropriate; and

- The label is the same as the brand-name medicine's label.

65. Upon information and belief, Defendant has not submitted, nor has the FDA evaluated or approved, any ANDA for the False Generic to become a Contrave® generic.

66. Upon information and belief, Defendant would not be approved even if it were to submit an ANDA for the False Generic to become a generic Contrave® because it could not satisfy several of the above required factors, including at least that the generic medicine: (1) is the same strength; (2) is the same type of product; and (3) lasts for at least the same amount of time.

67. The following table again summarizes some of the differences between Contrave® and Defendant's False Generic:

| **Characteristic** | **Contrave®** | **Defendant's False Generic** |
|---|---|---|
| 90 mg of Bupropion per tablet | Yes | No |
| 8 mg of Naltrexone per tablet | Yes | No |
| Sustained-release Naltrexone | Yes | No |
| Single tablet combining Bupropion and Naltrexone | Yes | No |
| Does not require splitting tablets | Yes | No |
| Dosing schedule specifying morning and evening doses | Yes | No |
| 90 mg total daily dose of Bupropion during week 1 | Yes | No |
| 8 mg total daily dose of Naltrexone during week 1 | Yes | No |

| | | |
|---|---|---|
| 180 mg total daily dose of Bupropion during week 2 | Yes | No |
| 16 mg total daily dose of Naltrexone during week 2 | Yes | No |
| 270 mg total daily dose of Bupropion during week 3 | Yes | No |
| 24 mg total daily dose of Naltrexone during week 3 | Yes | No |
| 360 mg total daily dose of Bupropion during weeks 4+ | Yes | No |
| 32 mg total daily dose of Naltrexone during weeks 4+ | Yes | No |
| Supported by clinical study for prescribed indication | Yes | No |
| FDA approved for prescribed indication | Yes | No |

68.    Defendant's statements directly represent to consumers that Found offers a Contrave® generic, which is false.

69.    Defendant's statement directly represents that Defendant's False Generic will have the same efficacy as Contrave®, which, upon information and belief, is unsubstantiated by any testing, clinical trials, or FDA approvals.

70.    Upon information and belief, Defendant uses the Contrave® Trademarks in this statement, and statements such as these, in communications to consumers to confuse them into believing Found is offering a Contrave® generic for sale.

71.    Upon information and belief, Defendant uses the Contrave® Trademarks in this statement, and statements such as these, in communications to consumers to confuse them into believing that Defendant's False Generic originates from, or is affiliated with, Plaintiffs and their Contrave® product.

72.    Upon information and belief, Defendant uses the Contrave® Trademarks in this statement, and statement such as these, in its advertising communications to consumers to mislead them into believing that Defendant's False Generic is Contrave®, a Contrave® equivalent, or a Contrave® generic.

73.    Defendant's misrepresentations that its False Generic is Contrave®, a Contrave® equivalent, or a Contrave® generic are unambiguously deceptive and literally false.

Case No.                                                                                                    COMPLAINT

74.    Defendant's misrepresentations concerning its False Generic are also misleading, even if not literally false, as a significant portion of reasonable weight loss consumers are likely to be deceived into believing that Defendant's False Generic is Contrave®, a Contrave® equivalent, or a Contrave® generic.

75.    Defendant's claims that its False Generic is Contrave®, a Contrave® equivalent, or a Contrave® generic is material to consumers' purchasing decisions because the safety and effectiveness of Contrave®, which is represented by its FDA approval, are desirable features for customers and provides Plaintiffs a competitive advantage.

76.    Upon information and belief, Defendant has made such claims in communications to consumer across the country in interstate commerce.

77.    Upon information and belief, the above instances of trademark infringement and false advertising represent a pattern and practice of Defendant's advertising of its False Generic to consumers.

78.    Upon information and belief, Found compounds its misleading statements by advertising its False Generic using clinical study results for Contrave®:

Case No.                                                                                                    COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21    79.    The above image was taken at the San Diego Obesity Week in November 2022.

22 Defendant advertises that it offers the medication "Naltrexone/Bupropion" and that "Clinical

23 Studies Patients" showed they lost "9.3% of their total body weight…after 12 months."

24    80.    But, the only clinical studies in the FDA database for a combination of Naltrexone

25 and Bupropion for weight loss are for Contrave® and not the False Generic.  The "9.3%" result

26 referenced in Defendant's advertising is identical to the results of a study of for Contrave®.

27    81.    Such a reference is false and misleading because, for all the reasons stated above,

28 the False Generic is not equivalent to Contrave® and therefore cannot rely on Contrave® clinical

trials as an accurate representation to consumers of the False Generic's expected effect. Moreover, upon information and belief, Defendant did not perform any clinical study with proper controls and statistical analyses, as would be required to compare the efficacy of the False Generic with Contrave®.

82.     Upon information and belief, consumers have been confused and deceived, and are likely to continue to be confused and deceived, by: (1) Defendant's misuse of the Contrave® Trademarks; and (2) Defendant's misrepresentations that its False Generic is Contrave®, a Contrave® equivalent, or a Contrave® generic.

83.     Plaintiffs have recently discovered online commentary indicating that consumers have been confused and deceived by Defendant's unlawful activity for years:

- Circa February 2020 Post Re: "*Generic Contrave*"
  - I started a program called Torch where you do an online consultation, a doctor prescribes medication, and they assign a coach you can text whenever and they check in on you every few days. The medication I am prescribed is *150mg Bupropion SR and 25mg Naltrexone*.[4]

- December 10, 2021 Post on GoWellness Blog by Courtney D'Angelo, MS, RD Re: Found Weight Loss Medication and Coaching (Review by a Dietitian)[5]
  - This review not only states in no uncertain terms that Found carries Contrave® as part of its medications available in Found's subscription service, but also includes a picture of actual Contrave® branded packaging to show readers what Found offers:

---

[4] https://www.reddit.com/r/Contrave/comments/gbhngr/generic_contrave_torch/ (emphasis added)

[5] https://www.gowellnessco.com/found-weight-loss-medication-coaching/

Case No.                                                          COMPLAINT



- January 1, 2023 Blog Article on Pharmacist.org Re:  Found Rx Weight Loss Review:  Is A Prescription Worth It?[6]

  o  "The doctors working for Found are able to prescribe the same weight loss medications as your primary care physician.  Medications like Orlistat, Qsymia, Contrave, and numerous others are available if you qualify for them."

84.  Defendant's conduct described herein constitutes trademark infringement, false designation of origin, false advertising, and a violation of California state law.

**<u>Defendant's Conduct Is Willful and Intended to Harm Plaintiffs</u>**

85.  Defendant's conduct was undertaken willfully, with the intent to mislead consumers and harm Plaintiffs.

86.  On February 21, 2020, Plaintiffs' Associate General Counsel sent a letter to Defendant notifying them that they had just recently become aware that Defendant was marketing and prescribing two drugs – naltrexone 50 mg and bupropion SR 150 mg – as the "generic name equivalent of Contrave."  *See* Exhibit C.

87.  In that letter, Plaintiffs notified Defendant that such statements were false, misleading, and a potential violation of state and federal advertising law.  *See id.*

---

[6] https://www.pharmacists.org/found-rx-weight-loss-review/ (emphasis added.)

-23-

Case No.                                                                                          COMPLAINT

88.   On or around March 12, 2020, Defendant responded to Plaintiffs' February 21, 2020 letter stating that Found had "reviewed this matter internally" and "it was an isolated incident." *See* Exhibit D.  Defendant went on to say that it had instructed its employees to avoid such representations in the future and that Defendant did "not expect a recurrence." *See id.*

89.   On October 6, 2021, Plaintiffs' and Defendant's leadership held a meeting to discuss a potential partnership between Defendant and Plaintiffs.

90.   Despite Defendant's representations in March 2020, Defendant's new CEO, Sarah Jones Simmer, indicated in this meeting that Defendant had patients "who want Contrave, many patients reach out and request Contrave®, but we can only give them generic Contrave."

91.   Plaintiffs' CEO, George Hampton, informed Ms. Simmer at that time that there was no such thing as generic Contrave®.

92.   Mr. Hampton warned Ms. Simmer that distributing the False Generic as a Contrave® generic could cause Plaintiffs to pursue Defendant for misrepresentation and intellectual property infringement.

93.   It was after this meeting that Plaintiffs initiated the above-described investigation and discovered that Defendant had continued its unlawful use of the Contrave® Trademarks and its misrepresentations that Defendant's False Generic was Contrave®, a Contrave® equivalent, or a Contrave® generic.

94.   Defendant has been on notice that the actions described above violated federal and state law since it received Plaintiffs' cease and desist letter in February 2020.

95.   Plaintiffs discovered that Defendant continued it unlawful activities in October 2021, when the Found CEO admitted that it was selling the False Generic as a Contrave® generic.

96.   Defendant was once again warned at that time that its actions constituted misrepresentation and intellectual property infringement in violation of the law.

97.   Given the repeated warnings that Defendant had that it was violating Plaintiffs' rights and the law, its conduct could only be willful.

Case No.                                                                                                        COMPLAINT

**Irreparable Harm to Plaintiffs**

98.     Defendant's conduct constitutes trademark infringement and false designation of origin, because, by referring to its False Generic as Contrave®, a Contrave® equivalent, or a Contrave® generic, Defendant deprives Plaintiffs of the advertising value of its Contrave® Trademarks and of the goodwill that would otherwise stem from the public's knowledge that Plaintiffs are the only source of the authentic FDA approved Contrave® medication.

99.     Defendant's false advertising of its False Generic as Contrave®, Contrave® equivalent, or a Contrave® generic also irreparably harms Plaintiffs as it communicates that Contrave®, a Contrave® equivalent, or a Contrave® generic is available in the marketplace outside of Plaintiffs' product and thereby deprives Plaintiffs of a legitimate competitive advantage by reducing consumers' incentive to seek out Contrave®.  Instead, misled consumers use the False Generic, ultimately reducing the goodwill in the Contrave® brand.

100.     Moreover, upon information and belief, Defendant's False Generic is less effective and causes more side effects than Contrave®, because, for example, Defendant's False Generic does not have the same dosage strengths or release profile (lacking sustained-release Naltrexone) as Contrave®.  Upon information and belief, patients who receive Defendant's False Generic instead of Contrave® will therefore be less likely to take Contrave® and recommend Contrave® to others, thus irreparably harming Plaintiffs.

101.     As a direct and proximate result of the foregoing, Plaintiffs have suffered irreparable harm to their brand value, reputation, and goodwill and unless Defendant's conduct is enjoined, the harm will continue and increase.  Plaintiffs have no adequate remedy at law.

## FIRST CAUSE OF ACTION

### (Federal Trademark Infringement under 15 U.S.C. § 1114)

103.     Plaintiffs reallege and incorporate by reference each of the above paragraphs as though fully set forth herein.

104.     Nalpropion owns a valid and protectable federal trademark registration for the Contrave® Trademarks on the Principal Register, as shown at Exhibit A attached hereto.

105.    Defendant's conduct alleged herein, including its promotion of its products as equivalent to, or generic versions of, Contrave®, constitutes use of Plaintiffs' federally registered Contrave® Trademarks in connection with advertising or sale of unauthorized goods and services in commerce.  This conduct creates a likelihood of confusion, mistake, and/or deception as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship, or approval of Defendant's products by Plaintiffs.  Defendant's conduct is likely to induce consumers to believe, contrary to fact, that Defendant's products are sponsored, endorsed, approved by, or connected with Plaintiffs.

106.    Defendant's conduct is without Plaintiffs' permission or authority.  As described above, Defendant had actual knowledge of Plaintiffs' prior and senior rights in the Contrave® Trademarks when they continued to use the Contrave® Trademarks to market and sell Found's products.  As a result, Defendant has committed its infringement with full knowledge of Plaintiffs' rights in the Contrave® Trademarks, and has willfully, deliberately, and maliciously engaged in the described acts with an intent to injure Plaintiffs and to deceive the public.

107.    Defendant's unauthorized use of the Contrave® Trademarks, or the reference to a generic version of Contrave® that is confusingly similar to the Contrave® Trademarks, in connection with and to identify Defendant's products, constitutes trademark infringement in violation of 15 U.S.C. § 1114.

108.    Upon information and belief, Defendant has profited or will profit from this infringement.

109.    This is an exceptional case under 15 U.S.C. § 1117(a).

110.    Defendant's conduct has caused and likely will continue to cause damage to Plaintiffs in an amount to be determined at trial and, unless enjoined, will continue to seriously and irreparably impair further the value of the Contrave® brand, for which there is no adequate remedy at law.

111.    Because of Defendant's infringement, Plaintiffs have been irreparably harmed in their business and will continue to suffer irreparable harm unless Defendant is enjoined from infringing the Contrave® Trademarks.

112.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendant from using the Contrave® Trademarks, or any mark confusingly similar to the Contrave® Trademarks, for any purpose, and to recover from Defendant all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain as a result thereof, in an amount not yet known, but which circumstances warrant including the cost of this action pursuant to 15 U.S.C. § 1117.

### SECOND CAUSE OF ACTION

**(Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a))**

113.    Plaintiffs reallege and incorporate by reference each of the above paragraphs as though fully set forth herein.

114.    Defendant's actions as alleged herein constitute false designations of origin in connection with the sale and advertising of unauthorized goods and services.  This conduct creates a likelihood of confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship, or approval of Defendant's products by Plaintiffs.  Defendant's conduct is likely to induce customers to believe, contrary to fact, that the Defendant's products are sponsored, endorsed, approved by, or connected with Plaintiffs.

115.    Defendant's conduct is without Plaintiffs' permission or authority.  As described above, Defendant had actual knowledge of Plaintiffs' prior and senior rights in the Contrave® Trademarks when it continued to use the Contrave® Trademarks to market and sell Defendant's products.  As a result, Defendant has falsely designated the origin of its False Generic with full knowledge of Plaintiffs' rights in the Contrave® Trademarks, and have willfully, deliberately, and maliciously engaged in the described acts with an intent to injure Plaintiffs and to deceive the public.

116.    Defendant's unauthorized use of the Contrave® Trademark or the reference to generic version of Contrave® that is confusingly similar to the Contrave® Trademarks, in connection with and to identify Found's products, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a).

Case No.                                                                                    COMPLAINT

117.    Upon information and belief, Defendant has profited or will profit from this conduct.

118.    This is an exceptional case under 15 U.S.C. § 1117(a).

119.    Defendant's conduct has caused and likely will continue to cause damage to Plaintiffs in an amount to be determined at trial and, unless enjoined, will continue to seriously and irreparably impair further the value of the Contrave, for which there is no adequate remedy at law.

120.    Because of Defendant's conduct, Plaintiffs have been irreparably harmed in their business and will continue to suffer irreparable harm unless Defendant is enjoined from falsely designating the origin of its False Generic by infringing the Contrave® Trademarks.

121.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendant from using the Contrave® Trademarks, or any mark confusingly similar to the Contrave® Trademarks, or otherwise falsely designating the origin for any purpose, and to recover from Defendant all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain as a result thereof, in an amount not yet known, but which circumstances warrant including the cost of this action pursuant to 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### (False Advertising under 15 U.S.C. § 1125(a))

122.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

123.    Defendant's false and misleading statements of fact concerning the characteristics of its False Generic as being Contrave®, Contrave® equivalent, or a Contrave® generic constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

124.    Defendant has disseminated the false and misleading statements to the public through commercial advertising and promotion, and thus caused them to enter interstate commerce.

125.    Defendant's false and misleading statements of fact concerning the characteristics of its False Generic as being Contrave®, Contrave® equivalent, or a Contrave® generic are material and are likely to influence consumers' purchasing decisions.

126.    To the extent it is being marketed as an alternative to Contrave®, the False Generic directly competes with Plaintiffs in the relevant market and Defendant's false advertising claims have actually deceived or tended to deceive a substantial number of consumers in that market.

127.    Defendant's false and misleading advertising has caused and continues to cause irreparable injury to the public and to Plaintiffs' business, goodwill, and reputation, and  Plaintiffs have no adequate remedy at law.  Upon information and belief, Defendant's actions will continue if not enjoined.

128.    As a direct and proximate result of Defendant's false and misleading advertising, Plaintiffs have incurred damages in an amount to be proven at trial.  Such damages include, among other things, lost sales, harm to Plaintiffs' business reputation and goodwill, lost profits, and harm to the value and goodwill associated with the Contrave® Trademarks and brand.

129.    Defendant knew, or by exercise of reasonable care should have known, that the above-described advertising claims are false and/or misleading and are likely to deceive the public. Accordingly, Defendant's actions were willful, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

### FOURTH CAUSE OF ACTION

**(Cal. Bus. Prof. Code 17200 et seq. (the "UCL"))**

130.    Plaintiffs reallege and incorporate by reference each of the above paragraphs as though fully set forth herein.

131.    Defendant's conduct alleged herein constitutes false designation of origin under 15 U.S.C. § 1125(a)(1)(A).  Defendant's conduct thus constitutes willful and deliberate unfair competition in wanton disregard of Plaintiffs' valuable intellectual property rights.   Upon information and belief, Defendant has profited from this infringement.

132.    Defendant's conduct alleged herein constitutes trademark infringement under 15 U.S.C. § 1114(a).    Defendant's conduct thus constitutes willful and deliberate unfair

1    competition in wanton disregard of Plaintiffs' valuable intellectual property rights.    Upon

2    information and belief, Defendant has profited from this infringement.

3         133.    Defendant's conduct alleged herein constitutes false advertising under 15 U.S.C. §

4    1125(a)(1)(B).  Defendant's conduct thus constitutes willful and deliberate unfair competition in

5    wanton disregard of Plaintiffs' right to have a competitive advantage by being the exclusive seller

6    of authentic Contrave®.    Upon information and belief, Defendant has profited from its

7    misrepresentations.

8         134.    Defendant's conduct has directly and proximately caused and will continue to cause

9    Plaintiffs substantial and irreparable injury, including customer confusion, injury to their

10   reputation, and diminution in value of their intellectual property and unless restrained, will

11   continue to seriously and irreparably impair further the value of Contrave® Trademarks, for which

12   there is no adequate remedy at law.

13        135.    In light of the foregoing, Plaintiffs are entitled to an injunction under Cal. Bus. &

14   Prof. Code §§ 17200 et seq. restraining Defendant from engaging in further such unlawful conduct,

15   as well as any and all other relief available under Section 17200.

16                              **FIFTH CAUSE OF ACTION**

17                    **(Cal. Bus. Prof. Code §§ 17500 et seq. (the "FAL"))**

18        136.    Plaintiffs reallege and incorporate by reference each and every allegation contained

19   in the above paragraphs as though fully set forth herein.

20        137.    Defendant's false and misleading statements constitute false advertising in

21   violation of Cal. Bus. & Prof. Code §§ 17500 et seq.

22        138.    Defendant's false and misleading statements of fact concerning the characteristics

23   of its False Generic as being Contrave®, Contrave® equivalent, or a Contrave® generic are

24   material and are likely to influence consumers' purchasing decisions.

25        139.    To the extent it is being marketed as an alternative to Contrave®, the False Generic

26   directly competes with Plaintiffs in the relevant market and Defendant's false advertising claims

27   have actually deceived or tended to deceive a substantial number of consumers in that market.

28

Case No.                                                              COMPLAINT

140.    Defendant's false and misleading advertising has caused and continues to cause irreparable injury to the public and to Plaintiffs' business, goodwill, and reputation and Plaintiffs have no adequate remedy at law.  Upon information and belief, Defendant's actions will continue if not enjoined.

141.    As a direct and proximate result of Defendant's false and misleading advertising, Plaintiffs have incurred damages in an amount to be proven at trial.

142.    In light of the foregoing, Plaintiffs are entitled to an injunction under Cal. Bus. & Prof. Code §§ 17500 et seq. restraining Defendant from engaging in further such unlawful conduct, as well as any and all other relief available under Section 17500.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

1.    For an injunction:

    a.    Pursuant to 15 U.S.C. § 1116, enjoining and restraining Defendant and its agents, affiliates, subsidiaries, parents, officers, directors, employees, assigns, and all persons in active concert or participation with them, from:

        i.    directly or indirectly using the Contrave® Trademarks or any colorable imitation thereof or any mark confusingly similar thereto;

        ii.    using or registering any trademark, service mark, trade or business name, domain name, social media username or handle, keyword, hashtag, vanity phone number, or attention-getting symbol that consists of or contains the Contrave® Trademarks or any colorable imitation thereof or any mark confusingly similar thereto; and

        iii.    directly or indirectly making any statement that misrepresents any of Defendant's products, including, but not limited to the False Generic, as Contrave®, equivalent to Contrave®, or a Contrave® generic.

-31-

1          b.     Pursuant to 15 U.S.C. § 1118, ordering that all advertisements,

2          standard customer communications, promotional materials, and

3          any and all other products or material using the Contrave®

4          Trademarks, or any colorable imitation thereof, or any other

5          designation confusingly similar thereto, be removed, made

6          inaccessible, and destroyed, as appropriate.

7     2.     For an order requiring Defendant to file with the Court and serve upon Plaintiffs

8 within fifteen (15) days after issuance of any injunction, a report in writing under oath setting

9 forth in detail the manner and form in which Defendant has complied with the injunction.

10     3.     For a judgment that:

11          a.     Defendant has violated Section 1114 of the Lanham Act;

12          b.     Defendant has violated Section 1125(a) of the Lanham Act as it

13          relates to false advertising;

14          c.     Defendant has violated Section 1125(a) of the Lanham Act as it

15          relates to false designation of origin;

16          d.     Defendant has violated Cal. Bus. & Prof. Code §§ 17200 and

17          17500 et seq; and

18          e.     Defendant has acted in bad faith, willfully, intentionally, and/or

19          with reckless disregard to Plaintiffs' rights.

20     4.     For an order awarding Plaintiffs:

21          a.     All profits derived by Defendant's wrongful acts complained of

22          herein;

23          b.     All damages sustained by reason of Defendant's wrongful acts

24          complained of herein;

25          c.     Plaintiffs' costs incurred in this action;

26          d.     Plaintiffs' reasonable attorneys' fees pursuant to 15 U.S.C. §

27          1117(a);

28          e.     Pre-judgment and post-judgment interest; and

Case No.                                              COMPLAINT

1          f.        For an order granting Plaintiffs such other and further relief as this

2           Court deems just and proper.

3                            **<u>DEMAND FOR JURY TRIAL</u>**

4     Plaintiffs hereby demands a trial by jury on all claims and issues so triable.

5     Dated: March 3, 2023

6

7                             Respectfully submitted,

8                             /s/ John S. Worden

9                             John S. Worden

10                            **VENABLE LLP**

11                            John S. Worden

                              jsworden@venable.com

12                            101 California Street, Suite 3800

                              San Francisco, CA 94111

13                            Phone: (415) 653-3750

14                            Christopher P. Borello (Pro Hac Vice Forthcoming)

                              cborello@venable.com

15                            1270 Avenue of Americas, 24th Floor

                              New York, NY 10020

16                            Phone: (212) 307-5500

                              Fax: (212) 307-5598

17

18                            Leonard L. Gordon (Pro Hac Vice Forthcoming)

                              lgordon@venable.com

19                            William C. Lawrence (Pro Hac Vice Forthcoming)

                              wclawrence@venable.com

20                            600 Massachusetts Ave., NW

                              Washington, D.C. 20001

21                            Phone: (202) 344-4000

                              Fax: (202) 344-8300

22

23

24

25

26

27

28

Case No.                                                                     COMPLAINT